[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10120

_____

AMI DUNN,

Plaintiff-Appellee,

*versus*

GLOBAL TRUST MANAGEMENT, LLC,
FRANK TORRES,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02223-WFJ-AAS

_____

————————————————

No. 21-10121

————————————————

ASHANTI MCINTOSH,

Plaintiff-Appellee,

*versus*

GLOBAL TRUST MANAGEMENT, LLC,
FRANK TORRES,

Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02532-WFJ-AEP

————————————————

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Global Trust Management, LLC, and Frank Torres (collectively, "Global Trust") challenge the denial of their motions to compel arbitration. When Ami Dunn and Ashanti McIntosh (collectively, "Plaintiffs") took out loans,

they entered into loan agreements that contained arbitration agreements. And those arbitration agreements contained delegation provisions that delegated threshold questions of arbitrability to an arbitrator. The district court found that the delegation provisions were unenforceable and that the arbitration agreements were unconscionable. After careful review, and with the benefit of oral argument, we reverse the district court's order because we conclude that the delegation provisions are enforceable.

## I.    RELEVANT BACKGROUND

### A. Factual Background

In 2015, Plaintiffs opened accounts with, and afterward obtained loans from, MobiLoans, LLC ("MobiLoans"). MobiLoans is owned and operated by the Tunica-Biloxi Tribe of Louisiana ("the Tribe"). According to Plaintiffs, the loans' interest rates exceeded the maximum interest rate allowed under Florida law.

McIntosh made one payment in connection with her loan in June 2016. And Dunn made payments in connection with her loan until April 2018. Ultimately, however, Plaintiffs defaulted on their loans.

In December 2016, Global Trust acquired the defaulted loans from MobiLoans, thereby acquiring all rights, titles, and interests in Plaintiffs' loans. Global Trust, through its own employees and third-party collection agencies, then sought to collect the debts that Plaintiffs owed.

### B. The Relevant Arbitration Agreements

When Plaintiffs opened their MobiLoans accounts, they consented to, and acknowledged, the MobiLoans Line of Credit Terms and Conditions (the "Terms and Conditions" or the "loan agreements"), which included agreements to arbitrate all disputes. During this process, Plaintiffs also acknowledged that: (1) Mobi-Loans is a Tribal lending company; (2) their lines of credit were governed by the Tribe's laws; and (3) their lines of credit "may not have any limitations on the terms . . . that the laws of [their] state may provide."

The 2015 Terms and Conditions—i.e., the terms in effect when Plaintiffs opened their MobiLoans accounts—stated that Mo-biLoans "reserve[d] the right to change the terms of this Agree-ment at any time with notice to you as required by Tribal Law and applicable federal law" and that continued use of MobiLoans's ser-vices would constitute acceptance of any changes to the terms. The loan agreements were updated in 2016 and in 2017. Each ver-sion contained information about borrowing money from Mobi-Loans, as well as an arbitration agreement and a delegation provi-sion. The various versions of the loan agreements also allowed MobiLoans to transfer the agreements to another entity.

### 1. Dunn's Arbitration Agreement

The parties agree that the 2017 Terms and Conditions apply to Dunn's claims because the 2017 Terms and Conditions were in effect when Dunn last used her MobiLoans account. Therefore, even though the district court reviewed the 2015 Terms and Con-dition—because "the updated terms do not materially alter the . . .

analysis"—we will analyze the 2017 Terms and Conditions with respect to Dunn.

The arbitration agreement within the 2017 Terms and Conditions (the "2017 Arbitration Agreement" or "Dunn's arbitration agreement") provides that the parties agree to resolve "any Dispute . . . by arbitration in accordance with Tribal Law and applicable federal law." The 2017 Arbitration Agreement also contains a delegation provision within its description of the disputes that are subject to arbitration. The 2017 Arbitration Agreement states that:

> A *"Dispute"* is any controversy or claim related in any way to your Mobiloans Credit Account or your application for a Mobiloans Credit Account, involving you and Lender, its marketing agent, collection agent, any subsequent holder of your Mobiloans Credit Account, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a *"Holder"* for purposes of this Agreement). The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of your Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the Mobiloans Credit Account and the handling or servicing of your

> Account whether such Dispute is based on a Tribal,
> federal or state constitution, statute, ordinance, regu-
> lation, or common law, and *including any issue con-*
> *cerning the validity, enforceability, or scope of this Account*
> *or the Arbitration Agreement.*

(emphasis added).

The 2017 Arbitration Agreement allows Dunn to select ei-
ther the American Arbitration Association, JAMS, or a mutually
agreed upon arbitration organization to administer the arbitration.
The 2017 Arbitration Agreement further provides that:

> The chosen arbitrator will utilize the rules and proce-
> dures applicable to consumer disputes of the chosen
> arbitration organization, but only to the extent that
> those rules and procedures are consistent with the
> terms of this Agreement, Tribal Law and applicable
> federal law. . . . Any arbitration under this Agreement
> may be conducted either on Tribal land or within
> thirty miles of your residence, at your choice, pro-
> vided that this accommodation for you shall not be
> construed in any way (a) as a relinquishment or
> waiver of the Tribe's sovereign status or immunity,
> or (b) to allow for the application of any law other
> than Tribal Law or applicable federal law.

The 2017 Arbitration Agreement also contains a severability clause,
which provides that "[i]f any of this Arbitration Agreement is held
invalid, the remainder shall remain in effect."

The 2017 Terms and Conditions contain a choice-of-law
provision that generally applies to the loan agreement and the

arbitration agreement. The choice-of-law provision states that: "This Agreement and the Arbitration Agreement are governed by the laws of the Tunica-Biloxi Tribe of Louisiana, the Indian Commerce Clause of the United States Constitution, the Federal Arbitration Act ('FAA'), and any applicable federal law necessary to uphold federal substantive statutory rights or remedies." While the 2017 Terms and Conditions provide a mechanism for parties to opt out of arbitration (but not the choice-of-law provision), Dunn did not opt out of arbitration.

### 2. *McIntosh's Arbitration Agreement*

Global Trust asserts that the 2016 Terms and Conditions were in effect when McIntosh last used her MobiLoans account. While McIntosh claims that the 2015 Terms & Conditions apply, on appeal she does not contest that the 2016 Terms & Conditions were in effect when she last used her MobiLoans account, and McIntosh correctly states that the 2016 and 2015 terms are "identical, or nearly identical." Therefore, we will analyze the 2016 Terms and Conditions with respect to McIntosh.

The arbitration agreement within the 2016 Terms and Conditions (the "2016 Arbitration Agreement" or "McIntosh's arbitration agreement") provides that "any Dispute . . . will be resolved by arbitration in accordance with Tribal Law." Like the 2017 Arbitration Agreement, the 2016 Arbitration Agreement defines the disputes that are subject to arbitration, as including "any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement."

The 2016 Arbitration Agreement also allows McIntosh to select either the American Arbitration Association, JAMS, or a mutually agreed upon arbitration organization to administer the arbitration. The 2016 Arbitration Agreement further provides that:

> The chosen arbitrator will utilize the rules and procedures applicable to consumer disputes of the chosen arbitration organization, to the extent that those rules and procedures do not contradict either Tribal Law or the express terms of this Arbitration Agreement . . . . Any arbitration under this Agreement may be conducted either on Tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than Tribal Law.

The 2016 Arbitration Agreement contains a choice-of-law provision, which applies to the arbitration agreement as a whole and states:

> This Arbitration Agreement is governed by the laws of the Tunica-Biloxi Tribe of Louisiana, the Indian Commerce Clause of the United States Constitution, the Federal Arbitration Act ("FAA") and the decisions of the United States Supreme Court interpreting the FAA. We do not have a presence in Louisiana or any other State of the United States of America. Neither this Agreement nor the Lender is subject to the laws of any State of the United States. Although Mobi-Loans, LLC is voluntarily agreeing to the application

of the FAA and relevant judicial interpretations of the FAA to this Arbitration Agreement, such voluntary application does not represent acquiescence by the Tribe of the general application of such law or any other federal law to the Tribe's operations unless such law is expressly applicable thereto.

Unlike the 2017 Arbitration Agreement, the 2016 Arbitration Agreement states that arbitration will be conducted "in accordance with Tribal Law" only, and the choice-of-law provision incorporates only the FAA and the Indian Commerce Clause of the United States Constitution, not other federal laws. Ultimately those distinctions do not alter our assessment of the delegation provisions, however, because the Tribe's arbitration code, which the parties agree is a component of Tribal law, provides that the arbitration code is intended "to ensure agreements to arbitrate . . . are enforceable to the fullest extent allowable under Tribal law . . . and under applicable federal law." The "applicable federal law" for these arbitration agreements, including their delegation provisions, is the FAA. *See* 9 U.S.C. § 2.

The 2016 Arbitration Agreement also contains a severability clause, which provides that "[i]f any of this Arbitration Agreement is held invalid, the remainder shall remain in effect." While the 2016 Terms and Conditions provide a mechanism for parties to opt out of arbitration (but not out of the choice-of-law provision), McIntosh did not opt out of arbitration.

## C. Procedural Background

Dunn and McIntosh each filed complaints and asserted claims against Global Trust under the Federal Debt Collection Practices Act and the Florida Consumer Collection Practices Act over Global Trust's debt-collection efforts.  Plaintiffs alleged that their loan agreements were unenforceable because the loans charged interest rates that exceeded the maximum interest rate allowed under Florida law.

Global Trust moved to compel arbitration based on the above-mentioned arbitration agreements.   In the alternative, Global Trust also moved for judgment on the pleadings because the loan agreements were governed by Tribal law and under Tribal law, the loan agreements, and therefore Plaintiffs' debts, were valid.

Plaintiffs opposed Global Trust's motion.  With respect to arbitration, Plaintiffs asserted that: (1) the arbitration agreements were unconscionable because Tribal law governed the loan agreements—including the arbitration agreements—and under Tribal law they could not assert their state law consumer protection claims; (2) the delegation provisions were unenforceable because under Tribal law they could not assert state or common law defenses to the enforceability of the arbitration agreements; and (3) Global Trust waived its right to compel arbitration "through participation in litigation and delay."

The district court first took Global Trust's motions under advisement and granted the parties time to conduct discovery

directed to whether the parties agreed to arbitrate their claims and, if so, the terms of the parties' arbitration agreements. After limited discovery, the district court found that Global Trust proved the existence of agreements to arbitrate and that Plaintiffs accepted the terms of those agreements. But the district court found that the delegation provisions were unenforceable and that the arbitration agreements, as a whole, were unconscionable.

As for the delegation provisions, the district court found that the arbitration agreements "restrict[] the arbitrator to applying the Tribe's substantive law—which is limited to an arbitration code and lending code but includes no substantive contract law or any other identifiable common law for that matter." The district court therefore held that "enforcing the delegation clause[s] would put the arbitrator in the 'impossible position' of deciding the validity/enforceability of the agreement[s] without a body of contract law to draw from" and would "leave[] Plaintiffs unable to raise contract defenses to challenge the agreement[s] as the FAA explicitly allows."

As for the arbitration agreements, the district court found that Florida law governed the formation of the arbitration agreements because there was "no tribal law to apply" and because Florida had the most significant relationship to the contract. And the district court held that, under Florida law, the arbitration agreements were unconscionable.

Based on these findings, the district court denied Global Trust's motions to compel arbitration. Because the district court

denied the motions to compel arbitration "based on the unconscionability of the arbitration agreement[s]," the district court did not consider Plaintiffs' alternative argument that Global Trust waived the right to compel arbitration.

Global Trust timely appealed the district court's order denying the motions to compel arbitration.[1]

## II.    STANDARD OF REVIEW

"We review *de novo* both the district court's denial of a motion to compel arbitration and the district court's interpretation of" the arbitration agreements. *Jones v. Waffle House, Inc.*, 866 F.3th 1257, 1263 (11th Cir. 2017) (citation omitted).

## III.    ANALYSIS

Global Trust asserts that the district court should have enforced the relevant delegation provisions and allowed the arbitrator to decide the question of arbitrability. The Supreme Court has

---

[1] The district court also denied Global Trust's motions for judgment on the pleadings, with respect to claims related to the validity of the loans, because the district court found that "[l]ike the provision[s] in the arbitration agreement, the tribal choice-of-law provision[s]" in the loan agreements were invalid. Global Trust has asked us to exercise pendent appellate jurisdiction over that decision because, according to Global Trust, it is "inextricably interwoven" with the district court's decision on the enforceability of the arbitration agreements. But, as our analysis explains, we will not address whether the arbitration agreements are enforceable, as that issue has been delegated to an arbitrator. Therefore, we decline to exercise pendent appellate jurisdiction to consider the district court's ruling on the motions for judgment on the pleadings.

held that parties may contractually agree "that an arbitrator, rather than a court, will resolve threshold arbitrability questions," including whether an arbitration agreement is enforceable. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–29 (2019); *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("[P]arties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable."). "When the parties' contract delegates the arbitrability question to an arbitrator"—i.e., when the relevant contract contains a delegation provision—"courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 531.

On appeal, we must determine whether the relevant delegation provisions are enforceable. If they are, we must respect them, and we cannot address whether the arbitration agreements themselves are unenforceable, as the parties have delegated that question to the arbitrator. Our analysis is divided into two parts. First, we discuss how courts analyze delegation provisions under the FAA. Then, we discuss the delegation provisions at issue here and whether they are enforceable.

## A. The FAA and Delegation Provisions

The FAA requires courts to enforce "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . , save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according

to their terms." *Henry Schein*, 139 S. Ct. at 529. In addition, under the FAA, "parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Id.* at 527.

In applying the FAA, the Supreme Court has held that parties may agree to delegate "'gateway' questions of 'arbitrability'" to an arbitrator, rather than have them decided by a judge. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a gateway issue"—i.e., a delegation provision—"is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Therefore, if an arbitration agreement exists and a party moves to compel arbitration, the court must decide whether the parties have delegated "threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell*, 804 F.3d at 1146. Put another way, before ruling on a motion to compel arbitration, the court must first determine whether the arbitration agreement contains a delegation provision.

If the arbitration agreement does contain a delegation provision, the court must then determine: (a) whether the parties have manifested a clear and unmistakable intent to arbitrate the relevant gateway issue; (b) whether the claimant has challenged the delegation provision specifically; and, if so, (c) whether the delegation provision is enforceable under the FAA. *See Jones*, 866 F.3d at 1264.

*a)  Whether the Parties Have Manifested an Intent to Arbitrate the
Gateway Issue*

To determine "whether the parties have manifested a clear
and unmistakable intent to arbitrate gateway issues, . . . we look to
the wording of the delegation provision itself." *Id.* at 1267. "When
deciding whether the parties agreed to arbitrate a certain matter
(including arbitrability), courts generally . . . should apply ordinary
state-law principles that govern the formation of contracts." *First
Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

An agreement may contain a choice-of-law provision that
specifies which law applies to issues of contract formation. If so, a
court may need to determine whether that choice-of-law provision
applies and whether it is valid. But if the chosen law cannot be
applied to the issue of contract formation, that does not end the
analysis or invalidate the delegation provision.

Absent any contractual choice-of-law provision, or when a
contractual choice-of-law provision cannot be applied for some rea-
son, courts engage in a choice-of-law analysis. For example, in *Par-
nell*, the loan agreement at issue "expressly provide[d] that the laws
of the Cheyenne River Sioux Tribe . . . govern[ed] the agreement,"
but this Court was presented "with no rule of tribal law regarding
contract interpretation." 804 F.3d at 1147. Instead of invalidating
the delegation provision on that ground, we applied Georgia law—
i.e., "the forum that Western Sky specifically targeted with its tele-
vision advertisement and in which Parnell viewed and signed the
Loan Agreement"—and proceeded to analyze the delegation

provision under Georgia law. *Id.* at 1147 (citing *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)).

As noted, the "wording of the delegation provision" will ultimately govern whether the parties have agreed to arbitrate the relevant gateway issue. *Jones*, 866 F.3d at 1267. For example, "[w]e have found the requisite intent when" a delegation provision provides that the parties "committed to arbitration": (1) "any issue concerning the validity, enforceability, or scope of this loan or the [a]rbitration agreement"; (2) "any and all disputes arising out of or in connection with this [a]greement, including any question regarding its existence, validity, or termination"; or (3) "any issue regarding whether a particular dispute or controversy is . . . subject to arbitration." *Id.* (last alteration in original) (first quoting *Parnell*, 804 F.3d at 1148; then quoting *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014); and then quoting *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012)). The plain language of these examples provides "clear and unmistakable evidence that . . . parties intend[] to commit the issue of arbitrability to the arbitrator." *Parnell*, 804 F.3d at 1148.

b) *Whether the Claimant Specifically Challenged the Delegation Provision*

"We may examine a challenge to a delegation provision only if the claimant 'challenge[d] the delegation provision directly.'" *Jones*, 866 F.3d at 1264 (alteration in original) (quoting *Parnell*, 804 F.3d at 1144). The claimant must show that "the delegation provision specifically—and not just the agreement as a whole"—can be

'defeated by fraud, duress, unconscionability, or another generally applicable contract defense.'" *Id.* (quoting *Parnell*, 804 F.3d at 1146).

This rule derives from the FAA's severability principle—i.e., "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). And, in *Rent-A-Center*, the Supreme Court extended that principle to delegation provisions. 561 U.S. at 71–72. The Supreme Court explained that a delegation provision is severable from the "substance of the remainder of the contract," i.e., from the remainder of an arbitration agreement. *Id.* at 72; *see In re Checking Acct. Overdraft Litig., MDL No. 2036*, 674 F.3d at 1255 ("[T]he 'delegation provision[]' 'is simply an additional, antecedent agreement' that 'is severable from the remainder of the' arbitration agreement." (quoting *Rent-A-Center*, 561 U.S. at 68–70)). Therefore, if a delegation provision exists, "any challenge to the validity of the [arbitration agreement] as a whole," or to any provision of the arbitration agreement other than the delegation provision, is severable from a challenge to the delegation provision itself. *Rent-A-Center*, 561 U.S. at 72; *see also In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885–86 (6th Cir. 2021) (same).

*c)* *Whether the Delegation Provision Is Enforceable*

Because "the FAA operates" on a delegation provision "just as it does on any other" arbitration agreement, a delegation provision is valid and enforceable under the FAA "save upon such

grounds as exist at law or in equity for the revocation of any contract." *Rent-A-Center*, 561 U.S. at 70 (quoting 9 U.S.C. § 2).  Section 2 of the FAA thereby permits both arbitration agreements and delegation provisions "to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  This Court has explained that § 2 of the FAA thus permits parties to assert "'generally applicable contract defenses' that challenge 'defects in the making of the arbitration agreement'" at issue.  *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1277 (11th Cir. 2012) (quoting *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1267 & n.28 (11th Cir. 2011)).[2]

\* \* \* \*

---

[2] We, along with our sister courts, have also recognized that an arbitration agreement is unenforceable when "the arbitration agreement's forum selection clause mandates the use of an illusory and unavailable arbitral forum." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1337 (11th Cir. 2016); *see, e.g., Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778–79 (7th Cir. 2014) ("[T]he dispute-resolution mechanism set forth in the loan agreements . . . did not exist[,] . . . [and therefore] this aspect of the loan agreements '[wa]s a sham and an illusion.'" (last alteration in original)).  Here, however, Plaintiffs may choose the arbitral forum and they are given a choice between the American Arbitration Association, JAMS, or another agreed upon arbitration organization.  Plaintiffs do not suggest that these arbitral forums are unavailable or illusory.

In summary, courts must first determine: (1) whether a valid arbitration agreement exists; and (2) who has the authority to determine gateway issues concerning arbitrability—i.e., whether the arbitration agreement contains a delegation provision. If a valid arbitration agreement contains a delegation provision, courts must then determine: (1) if the delegation provision applies to the relevant gateway issue of arbitrability; (2) whether the claimant challenged the delegation provision directly (rather than challenging the arbitration agreement as a whole); and, if so, (3) whether the delegation provision is enforceable under the FAA.

## B.   The Relevant Delegation Provisions

Here, Plaintiffs' loan agreements contain arbitration agreements, which contain delegation provisions. The district court found that these agreements existed, and that Plaintiffs accepted their terms. And Plaintiffs do not contest those findings.

Moreover, both arbitration agreements provide that "any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement" is a dispute subject to arbitration. Plaintiffs do not contest that the relevant delegation provisions apply to the threshold arbitrability issue they have raised—i.e., whether their arbitration agreements are enforceable. Indeed, the plain language of the relevant delegation provisions explicitly delegates questions of enforceability to an arbitrator. And we have found that this wording demonstrates the requisite intent to delegate the threshold issue of enforceability. *See Parnell*, 804 F.3d at 1147–48. Therefore, the only issues on appeal related to the

delegation provisions are whether Plaintiffs challenged the provisions directly and, if so, whether they are enforceable.

Our review is limited to Plaintiffs' arguments about the delegation provisions specifically. *See Jones*, 866 F.3d at 1264 (explaining that a claimant must show that "the delegation provision specifically—and not just the agreement as a whole—can be 'defeated'" (quoting *Parnell*, 804 F.3d at 1144)). While Plaintiffs have made various arguments about why their arbitration agreements, as a whole, are unconscionable, if the delegation provisions are enforceable, those arguments must be left for the arbitrator to decide. *See Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override [that agreement]."); *Rent-A-Center.*, 561 U.S. at 72 ("[U]nless [the claimant] challenged the delegation provision specifically, we must treat it as valid under § 2, . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

As for the delegation provisions specifically, Plaintiffs assert, and the district court found, that the delegation provisions are not enforceable because the arbitration agreements restrict an arbitrator to applying the Tribe's law, which allegedly lacks substantive contract law. According to Plaintiffs and the district court, Plaintiffs are therefore prohibited from raising contract defenses that they are otherwise permitted to raise under the FAA. In other words, Plaintiffs assert that the relevant delegation provisions are

unenforceable because they operate as prospective waivers of their rights to pursue remedies otherwise available under the FAA.

In considering this issue, our review is limited to the delegation provisions, as we must determine whether the delegation provisions, themselves, prospectively waive Plaintiffs' rights under the FAA. We do not consider whether the arbitration agreements, as a whole, prospectively waive any statutory rights. This approach is consistent with the severability principle applied to delegation provisions by the Supreme Court in *Rent-A-Center*, as well our own precedents. *See, e.g.*, *Jones*, 866 F.3d at 1264; *Parnell*, 804 F.3d at 1146; *In re Checking Acct. Overdraft Litig.*, *MDL No. 2036*, 674 F.3d at 1255.

With that principle in mind, our analysis proceeds in three steps. First, we consider whether the delegation provisions incorporate the FAA. Second, we consider whether the delegation provisions preclude Plaintiffs from raising defenses to the enforceability of their arbitration agreements that are otherwise available under the FAA. Third, we consider whether Plaintiffs' arguments that the Tribal choice-of-law provisions cannot be applied to the gateway issue of arbitrability and that the choice-of-law provisions render their arbitration agreements unenforceable are severable from the issue of delegation.

### 1. Whether the Delegation Provisions Incorporate the FAA

As a preliminary matter, Plaintiffs are correct that, under the FAA's savings clause, § 2, they may challenge the enforceability of their arbitration agreements "by 'generally applicable contract

defenses, such as fraud, duress, or unconscionability.'" *See Concepcion*, 563 U.S. at 339 (quoting *Casarotto*, 517 U.S. at 687). Rather than foreclosing Plaintiffs' ability to assert their contract defenses under the FAA, however, the relevant agreements incorporate the FAA.

Dunn agreed to arbitrate disputes, including threshold questions of arbitrability, "in accordance with Tribal Law and applicable federal law." And, as previously noted, the FAA is the applicable federal law. McIntosh agreed to arbitrate disputes, including threshold questions of arbitrability, "in accordance with Tribal Law." While that agreement, unlike Dunn's, does not explicitly incorporate applicable federal law, i.e., the FAA, the parties agree that Tribal law consists of an arbitration code. And the Tribe's arbitration code provides that arbitration agreements are subject to "applicable federal law."

True, the delegation provisions require that arbitration proceed in accordance with *both* Tribal law and the FAA. But Plaintiffs have not suggested, and we do not conclude, that the application of Tribal law itself conflicts with the FAA. The application of both Tribal law and the FAA "should not be construed as being in conflict . . . unless no other reasonable interpretation is possible." *See Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*, 329 F.3d 809, 814 (11th Cir. 2003) (quoting *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996)). Here, a reasonable interpretation that arbitration can proceed in accordance with both Tribal law and the FAA is possible because, under Tribal law,

arbitration agreements are subject to the FAA. The delegation provisions thus incorporate, rather than preclude, the FAA.

### 2. Whether the Delegation Provisions Otherwise Preclude the FAA

The district found, and Plaintiffs assert on appeal, however, that the arbitration agreements restrict "the arbitrator to applying the Tribe's substantive law" and therefore "put the arbitrator in the 'impossible position' of deciding the validity/enforceability of the agreement without a body of contract law to draw from." In other words, although the delegation provisions incorporate the FAA and therefore preserve Plaintiffs' right to assert general contract defenses, pursuing that remedy is meaningless because there is no substantive contract law available to the arbitrator to apply in order to determine enforceability.

On appeal, however, we must determine whether the delegation provisions themselves inhibit an arbitrator from deciding whether the arbitration agreements are unenforceable. In so doing, our analysis focuses on the delegation provisions because a "challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing" a delegation provision. *Rent-A-Center*, 561 U.S. at 70.

Even assuming the district court is correct that the Tribe lacks its own substantive contract law, that fact would not

necessarily invalidate the delegation provisions.[3]  The relevant inquiry remains whether the delegation provisions themselves inhibit the arbitrator from considering Plaintiffs' arguments about the enforceability of their arbitration agreements under the FAA.[4]

The relevant delegation provisions require that arbitration be conducted in accordance with both Tribal Law and the FAA. And the delegation provisions delegate consideration of all disputes concerning "the validity, enforceability, or scope of" the arbitration agreements to the arbitrator.

---

[3] In their amici briefs, the Native American Financial Services Association, Navajo Community Development Financial Institution, Association on American Indian Affairs, Tunica-Biloxi Tribe of Louisiana and Tunica-Biloxi Tribe of Louisiana Lending Regulatory Commission, assert that the district court inaccurately characterized the Tribe's law and made unfair assumptions about the Tribe's legal system.  While we acknowledge these arguments, the district court's conclusions about Tribal law are generally irrelevant to the disposition of this appeal.  Because the parties have delegated the threshold question of arbitrability to an arbitrator, the arbitrator will decide whether Tribal law applies to Plaintiffs' contract defenses under the FAA.  But we do note that, for the purposes of this appeal, Global Trust has not identified the relevant principles of the Tribe's contract law.

[4] If there is no substantive Tribal contract law, the arbitrator would need to apply another source of law to determine whether the arbitration agreements are enforceable under the FAA.  *See In re Checking Acct. Overdraft Litig., MDL No. 2036*, 685 F.3d at 1277 ("*Concepcion* affirmed that, under [the FAA's] 'savings clause[,]' . . . 'generally applicable contract defenses' provided by state law 'such as fraud, duress, or unconscionability' are not preempted by the FAA." (quoting *Concepcion*, 563 U.S. at 339)).  Therefore, our analysis also considers whether the arbitrator could do so.

Other provisions of the arbitration agreements are also ap-plicable to the delegation provisions because they pertain to the matters and procedures that apply to disputes concerning arbitra-bility.  For example, the term "Dispute" includes "all claims or de-mands . . . based on any legal or equitable theory (tort, contract, or otherwise)" and applies to all disputes "based on a Tribal, federal or state constitution, statute, ordinance, regulation, or common law."  Therefore, under the terms of Plaintiffs' agreements, Plain-tiffs' contract-based claim that their arbitration agreements and loan agreements are unconscionable and thus unenforceable  is a dispute that is subject to, and can be resolved at, arbitration.  The question then becomes, does the delegation provision inhibit the arbitrator from deciding what law applies?

There are two clauses that may affect an arbitrator's ability to determine what law applies to Plaintiffs' contract defenses under the FAA.  First, the arbitrator may only "utilize the rules and pro-cedures applicable to consumer disputes of the chosen arbitration organization, to the extent that those rules and procedures do not contradict either Tribal Law or the express terms of this Arbitration Agreement."  Second, while the arbitration "may be conducted . . . within thirty miles of [Plaintiffs'] residence[s], . . . this accommoda-tion . . . shall not be construed in any way (a) as a relinquishment

26                    Opinion of the Court                    21-10120

or waiver of the Tribe's sovereign status or immunity, or (b) to al-
low for the application of any law other than Tribal Law."[5]

As for the first clause, the inability to use an arbitration or-
ganization's rules and procedures that conflict with the terms of
the arbitration agreements, or Tribal law, does not inhibit the arbi-
trator's ability to consider Plaintiffs' argument that their arbitration
agreements are unenforceable, or to decide what law applies to
that argument. While that clause may prevent the use of certain
rules and procedures at arbitration, it neither prevents an arbitrator
from considering arguments that are expressly permitted under the
arbitration agreements—such as Plaintiffs' argument that their ar-
bitration agreements are unenforceable—nor prevents the arbitra-
tor from using other rules and procedures for determining what
law to apply, if necessary.

As for the second clause, the phrase "shall not be construed"
means that the arbitrator cannot use Plaintiffs' chosen location for
the arbitration as a way to determine that "any law other than
Tribal Law" applies. In other words, the place of arbitration cannot

---

[5] The 2017 Arbitration Agreement, which applies to Dunn, contains slightly
different language. As for the first clause, Dunn's arbitration agreement states:
"only to the extent that those rules and procedures are consistent with the
terms of this Agreement, Tribal Law and applicable federal law." And as to
the second clause, Dunn's agreement states that "the application of any law
other than Tribal Law or applicable federal law." We note that this language
is even more favorable to Plaintiffs in showing that arbitration under the 2017
Arbitration Agreement arbitration must proceed in accordance with both
Tribal law and the FAA.

be used as a factor against application of Tribal law in the arbitrator's choice-of-law analysis. Tribal law explicitly accommodates the use of applicable federal law, including the FAA. So the phrase does not otherwise prohibit the arbitrator from using any other factor when determining what law applies, based on the parties' agreement, to Plaintiffs' defenses to the enforceability of their arbitration agreements under the FAA.

We thus conclude that the contractual language of the delegation provisions does not foreclose—i.e., "forbid[] the assertion of" or "eliminat[e]," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)—Plaintiffs' ability to challenge the enforceability of their arbitration agreements under the FAA.

We recognize that the Fourth Circuit reached a different conclusion in *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021), *cert. dismissed*, *Treppa v. Hengle*, 142 S. Ct. 2093 (2024)[6] In *Hengle*, the Fourth Circuit held that a delegation clause was unenforceable because it prospectively waived any reliance on substantive federal laws and therefore "require[d] an arbitrator to determine whether a valid and enforceable arbitration agreement exists without access to the substantive federal law necessary to make that determination." 19 F.4th at 336–40. In so doing, the Fourth Circuit noted that the relevant arbitration agreements contained language stating that the arbitrator "shall apply applicable substantive Tribal law consistent with the [FAA]" and that "any arbitration shall be

---

[6] In May 2022, the parties in *Hengle* stipulated to the dismissal of the petition for certiorari.

governed by the FAA and subject to the laws of the [Tribe]." *Id.* at
340–41. The Fourth Circuit concluded that these provisions meant
that "the arbitration provision falls within the purview of the FAA
and should accordingly be enforced by a court of competent juris-
diction, but, once the court conveys the dispute to the arbitrator,"
the arbitrator "must apply only the laws of the Tribe to the exclu-
sion of Plaintiffs' potential federal and state statutory rights, includ-
ing defenses to arbitrability arising under federal and state law." *Id.*
at 341 (quotation marks omitted).

Here, however, the delegation provisions contain stronger
language incorporating the FAA. Instead of stating that the arbi-
tration is to be conducted "subject to the laws of the [Tribe]" to the
exclusion of the FAA, the relevant arbitration agreements provide
that arbitration must proceed in accordance with both Tribal law
and the FAA. And the Tribe's law itself incorporates the FAA for
arbitration proceedings. Thus, we conclude that the relevant dele-
gation provisions at issue do not incorporate Tribal law to the ex-
clusion of the FAA.

### 3. *Whether the Issues Plaintiffs Raised Regarding the Choice-of-Law Provisions Are Specific to Delegation*

Plaintiffs also assert that an arbitrator would be unable to
engage in a choice-of-law analysis because the arbitration agree-
ments prevent an arbitrator from applying any sources of law other
than Tribal law. In making this argument, Plaintiffs rely on the
choice-of-law provisions that apply to their arbitration agreements,
and loan agreements, as a whole.

As a preliminary matter, the choice-of-law provisions applicable to Plaintiffs' arbitration agreements expressly incorporate the FAA. Therefore, as applied to the delegation provisions, the choice-of-law provisions do not foreclose the arbitrator's ability to consider Plaintiffs' argument that their arbitration agreements are unenforceable under § 2 of the FAA.[7]

---

[7] The Second and Third Circuits have held that arbitration agreements containing Tribal choice-of-law provisions were invalid because the arbitration agreements operated as prospective waivers of federal rights. *See Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 240–41 (3d Cir. 2020); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 117 (2d Cir. 2019). While both decisions addressed challenges to delegation provisions, the decisions mainly focused on whether the arbitration agreements, as a whole, operated as prospective waivers. *See Williams*, 965 F.3d at 237–38 ("Plaintiffs contested the delegation clause in their opposition to the motion to compel, and they challenged the clause based upon arguments they made concerning the enforceability of the entire arbitration agreement. . . . [Therefore,] we will proceed to examine Plaintiffs' enforceability arguments."); *Gingras*, 922 F.3d at 126 ("Plaintiffs mount a convincing challenge to the arbitration clause itself. Their complaint alleges that '[t]he delegation provision of the Purported Arbitration Agreement is also fraudulent.' That specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court." (alteration in original) (citation omitted)).

We conclude, however, that both the relevant delegation provisions and the relevant choice-of-law provisions incorporate, and therefore do not foreclose, Plaintiffs' rights under the FAA. While we also note that the district court found that "there is no prospective waiver of federal rights here," we cannot address whether the arbitration agreements (as opposed to the delegation provisions themselves) are unenforceable because they prevent Plaintiffs from raising their federal or state-law claims. The parties have delegated issues of enforceability to the arbitrator, and we "must respect the parties' decision" to do so. *Henry Schein*, 139 S. Ct. at 531.

Moreover, whether the choice-of-law provisions apply to Plaintiffs' argument that their arbitration agreements are unenforceable is an issue beyond the scope of the enforceability of the delegation provisions.  As noted, the delegation provisions are severable from the arbitration agreements as a whole and from other provisions of the arbitration agreement.  *See In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d at 1255 ("[T]he 'delegation provision,' 'is simply an additional, antecedent agreement' that 'is severable from the remainder of the' arbitration agreement" (quoting *Rent-A-Center*, 561 U.S. at 68–70)).  And "a 'challenge to another provision of the contract . . . does not prevent a court from enforcing' . . . the delegation provision." *In re StockX*, 19 F.4th at 886 (first alteration in original) (quoting *Rent-A-Center*, 561 U.S. at 70).

Accordingly, the issues of whether the choice-of-law provisions (1) are valid and enforceable, (2) can and do apply to the issue of arbitrability, and (3) render the arbitration agreements unenforceable do not pertain to the enforceability of the delegation provisions.  Instead, those disputes pertain to the "the validity, enforceability, [and] scope of" the choice-of-law provisions and their application to the arbitration agreements as a whole, and have been delegated to the arbitrator.

Indeed, a valid and enforceable choice-of-law provision is not a prerequisite to determining the enforceability of a delegation provision or the "gateway" issue of arbitrability.  As already discussed, if a contract does not specify what law applies, or if the contractually specified law cannot be applied, courts engage in a

choice-of-law analysis. For example, in *Parnell*, we determined that Georgia law applied to the interpretation of a delegation provision because the Court was presented "with no rule of tribal law regarding contract interpretation." 804 F.3d at 1147. And in the context of arbitration agreements governed by Chapter 2 of the FAA—the chapter governing international arbitration agreements—the Supreme Court has explained that issues pertaining to "what law the arbitrators will apply to petitioner's claims" are "premature" at the arbitration-enforcement stage because "the choice-of-law question . . . must be decided in the first instance by the arbitrator." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995).

We note that Tribal law—in accordance with the Tribe's arbitration code—may provide its own framework for determining what source of law to apply to Plaintiffs' argument that their arbitration agreements are unenforceable under the FAA. Under the Tribe's arbitration code, if an arbitration agreement

> does not set forth a choice of law provision, the Tribal Court shall apply the substantive law of the Tribe, including any applicable choice of law principles, and then applicable federal law and then the substantive law of the State of Louisiana, including any applicable choice of law principles, provided that such State law does not conflict with this Code or other applicable Tribal Law.

The Tribe's arbitration code thereby implies that: (1) the Tribe may have its own choice-of-law principles; and (2) if Tribal law cannot

be applied, and therefore the choice-of-law provisions are invalid, an arbitrator may consider applicable federal law and then Louisiana state law.[8]

The district court did not apply this framework, and instead applied federal common law choice-of-law rules to determine that Florida law applied to Plaintiffs' contract defenses under the FAA. At arbitration, the arbitrator may conduct the same (or a different) choice-of-law analysis and reach the same (or a different) conclusion as the district court—i.e., that Tribal law cannot be applied to the "gateway" issue of arbitrability and that the choice-of-law provisions render the arbitration agreements unenforceable.

But how an arbitrator will ultimately determine what law to apply is irrelevant. *Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (declining to consider argument that the arbitrator will read a choice-of-law provision "to displace American law" because the argument was speculative "at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award").   What is

---

[8] Global Trust asserts that the Tribe's code of civil procedure further provides that Louisiana state law may be available to an arbitrator.  In response, Plaintiffs assert that Global Trust made this argument for the first time on appeal and that the Tribe's code of civil procedure was unavailable to them during the relevant time period.  Plaintiffs have also requested that this Court take judicial notice of archived webpages showing that the Tribe's code of civil procedure was not previously available to them.  That motion is denied as irrelevant because we do not rely on the Tribe's code of civil procedure in reaching our conclusion that the delegation provisions are enforceable.

dispositive at this stage of the proceedings is that the parties have agreed to delegate all questions pertaining to the enforceability of their arbitration agreements, including the choice-of-law provisions, to an arbitrator.  Because we must respect the parties' decision to delegate these questions, we cannot consider these or the other arbitrability issues raised by the parties and amici.[9]  *See Henry Schein*, 139 S. Ct. at 531.

Ultimately, our analysis is guided by the Supreme Court's "explan[ation] that [a delegation provision] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce."  *Id.* at 529 (quoting *Rent-A-Center*, 561 U.S. at 70).  Here, the relevant delegation provisions incorporate the FAA and do not otherwise foreclose Plaintiffs' ability to assert the contract defenses available to them under § 2 of the FAA.  We therefore conclude that the delegation provisions themselves are enforceable.

Our holding, however, is narrow.  We do not address whether the arbitration agreements are enforceable, or whether

---

[9] In its amicus brief, along with supporting the district court's holding, Public Justice asserts that "rent-a-tribe schemes use arbitration agreements, including delegation clauses, as a way to ensure that courts do not examine whether the loans are truly tribal loans . . . and shielding the transactions from the reach of state usury laws."  The delegation provisions do not, however, shield the arbitration agreements or loan agreements from review.  Rather, in enforcing the parties' agreement to delegate threshold questions of arbitrability, we hold that these issues must be submitted to an arbitrator who will determine whether the agreements are arbitrable.  Here, the parties agreed that the agreements would be reviewed, just not by a federal court.

the choice-of-law provisions apply to that issue.  *See In re StockX*, 19 F.4th at 886–87 ("[T]oday's decision is narrow. . . . 'It's not about the *merits* of the case.  It's not even about *whether* the parties have to arbitrate the merits.    Instead, it's about *who should decide* whether the parties have to arbitrate the merits." (emphases in original) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020))).  Instead, in this decision, we hold only that the parties have agreed to delegate questions pertaining to the enforceability of their arbitration agreements to an arbitrator and that we must respect the parties' agreement to do so.  *See Henry Schein*, 139 S. Ct. at 531.

## IV.    CONCLUSION

For all these reasons, we conclude that the district court erred in holding that the delegation provisions were unenforceable, and we therefore reverse the district court's denial of Global Trust's motion to compel arbitration and remand for proceedings consistent with this opinion.  Because the district court did not address whether Global Trust waived the ability to compel arbitration, Plaintiffs may raise that issue on remand.

**REVERSED and REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 03, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-10120-JJ  ; 21-10121 -JJ
Case Style:  Ami Dunn v. Global Trust Management, LLC, et al
District Court Docket No:  8:19-cv-02223-WFJ-AAS

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing must include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellee(s) / Respondent(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion